UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| DEBRA S. ADAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15 CV 77 JMB |
| | ) | |
| NANCY A. BERRYHILL, [1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER** [2]

Debra S. Adair ("Plaintiff") appeals the decision of the Commissioner of Social Security

("Defendant") denying her application for disability benefits under the Social Security Act.  See

42 U.S.C. § 401 *et seq*.  Because the decision is supported by substantial evidence and correctly

applies the governing law, it is **AFFIRMED**.  See 42 U.S.C. § 405(g).

I.      **Background**

A.      **Procedural History**

At the time of her application for disability benefits, Plaintiff was 47 year old and alleged

disability based upon Reflex Sympathetic Dystrophy ("RSD"), a chronic pain syndrome,

affecting her right foot.  (Tr. 191, 236)  Plaintiff's RSD resulted from a work accident.  In

February of 2009, Plaintiff was employed as an animal cruelty investigator in New Jersey when a

---

[1] The parties have consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c).

[2] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

doghouse fell on her right foot. (Tr. 357) Plaintiff stopped working after this accident due to excessive pain in her right foot.

As a result of her injury, Plaintiff protectively applied for disability benefits on July 20, 2012. (Tr. 222) Plaintiff's initial application was denied on November 6, 2012. (Tr. 108-112) Plaintiff then requested a hearing before an administrative law judge ("ALJ") to contest this decision. At the hearing[3], Plaintiff appeared (with counsel), and testified concerning the nature and extent of her disability and her symptoms. (Tr. 31-60) After hearing Plaintiff's testimony and examining the objective medical evidence, and after taking testimony from a vocational expert ("VE"), the ALJ issued a decision, dated May 19, 2014, denying benefits. (Tr. 10-22) Plaintiff then sought review of the ALJ's decision, but the Appeals Council denied review. (Tr. 1-3) The case is thus properly before this Court. See 42 U.S.C. § 405(g).

### B.   Medical Background[4]

As noted above, Plaintiff's injury resulted from a workplace accident in February of 2009 when a doghouse fell on Plaintiff's foot. After the injury, Plaintiff went to an urgent care clinic. At the clinic, x-rays revealed no fracture in the foot, and Plaintiff was released with a prescription for pain-killers and a Cam Walker. (Tr. 349-50) Shortly thereafter, Plaintiff began treating with podiatrist Jimmy Trang, D.P.M. Plaintiff underwent several diagnostic tests in the subsequent months with mixed results. For instance, a magnetic resonance imaging ("MRI") test from March 19, 2009 revealed a stress fracture at the base of the 5th metatarsal; but a follow-up MRI on June 10, 2009 revealed no evidence of fracture, (Tr. 517, 355), and a Computerized Tomography ("CT") scan on August 13, 2010, showed complete healing of the prior metatarsal

---

[3] Plaintiff's hearing was scheduled for October 25, 2013, but the hearing was postponed until March 25, 2014, in order to grant Plaintiff more time to find legal counsel. (Tr. 75-93)

[4] The Court notes that it has reviewed the entire medical record in this matter. The medical evidence discussed in this section is an overview of the most pertinent records.

fracture with no acute abnormality. (Tr. 569) By December of 2010, there were "no findings in the area of concern." (Id.)

Plaintiff continued to report pain to her doctors, however, and she began seeing pain specialists. Dr. Luvell Glanton, M.D., noted that multiple diagnostic tests were negative for any abnormalities, and started Plaintiff on lumbar sympathetic blocks to deal with her pain, as opposed to pain medications. (Tr. 420-21, 427) Plaintiff initially reported that this procedure left her with "0/10 pain."[5] (Tr. 427) Shortly thereafter, in July of 2011, Plaintiff began seeing pain specialists at Barnes Jewish Hospital due to continuing pain. She underwent a series of additional lumbar sympathetic blocks, which led to some relief, but Plaintiff complained that the relief was short-lived. (See Tr. 445, 450, and 461) Plaintiff's doctors identified her as "an excellent candidate" for a "10-week multidisciplinary pain management program," but there is no evidence that Plaintiff ever followed up with that recommendation. (Tr. 454)

During this time, Plaintiff was pursuing a Worker's Compensation claim, and in the course of this process, Plaintiff was referred to another pain specialist, Dr. Suresh Krishnan, M.D. (Tr. 586) Dr. Krishnan examined Plaintiff in December of 2011, and concluded that Plaintiff "likely has [RSD]". (Tr. 591) Dr. Krishnan recommended that Plaintiff undergo a spinal cord stimulator trial after ten weeks of physical therapy with biofeedback and deconditioning exercises for the foot. (Id.) Plaintiff did not follow up with this advice, however, and did not seek any regular treatment for her right foot throughout 2012, other than presenting to emergency rooms a couple of times, complaining of pain. (Tr. 468, 554, 535) Each of these

---

[5] The Court notes, however, that Plaintiff returned to Dr. Trang shortly after this meeting, and told Dr. Trang that the lumbar block actually increased her pain, and Dr. Trang then prescribed pain medication. (Tr. 481)

times, Plaintiff was asked to follow up with her primary care doctor, but there is no evidence she did so. Each time, Plaintiff requested—and was prescribed—narcotic pain medication. (Id.)

Plaintiff finally followed up with Dr. Krishnan in January of 2013. At that point, Dr. Krishnan suggested that Plaintiff undergo further diagnostic testing, and physical therapy. There is no evidence that Plaintiff followed up with the testing or physical therapy recommendations at that time.[6] Instead, Plaintiff received prescriptions for Vicodin, both from Dr. Krishnan, and from a "walk in clinic for pain." (Tr. 584, 642) Dr. Krishnan continued to recommend that Plaintiff go forward with a spinal cord stimulator trial, which Plaintiff eventually agreed to pursue. Since February of 2013, Plaintiff has undergone two such trials, which she claims made the pain worse. (Tr. 615, 620) Subsequently, Plaintiff was treated with pain medications and additional ankle block procedures.

C.    **ALJ's Decision**

In deciding Plaintiff's case, the ALJ applied the familiar five step test for determining disability applications. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her initial injury. (Tr. 12) At step two, the ALJ found that Plaintiff's RSD qualified as a severe impairment.[7] (Id.) The ALJ also found that Plaintiff suffered from various non-severe impairments, including degenerative disc disease, third right digital interphalangeal joint arthropathy, affective disorder, and anxiety disorder. (Id.) At step three, the ALJ found

---

[6] Plaintiff later claimed that she began physical therapy, but had to discontinue it because it increased her pain. There are no medical records showing that she engaged in physical therapy in 2013.

[7] The ALJ found Plaintiff's RSD was on her left foot. (Tr. 12) This is a typographical error—the record makes clear that it is Plaintiff's right foot that is at issue. (See, e.g., Tr. 15)

that Plaintiff did not suffer from any impairment(s) that met or medically equaled the severity of

a listed impairment found at 20 C.F.R. Part 404 Subpart P, Appendix 1. (Tr. 13)[8]

Before arriving at step four, the ALJ reviewed the entire record and concluded that

Plaintiff retained the residual functional capacity ("RFC") to:

> perform a range of medium work as defined in 20 CFR 404.1567(b) except that
> she is able to lift and carry up to 50 pounds occasionally and 25 pounds
> frequently. She is able [to] stand and/or walk for approximately 3 hours per 8-
> hour day for 20 minutes at a time and sit for approximately 6 hours per 8-hour day
> for 45 minutes at a time with normal breaks. She can climb ramps and stairs
> frequently, but never climb ladders, ropes or scaffolds. She can balance
> occasionally and stoop, kneel, crouch and crawl frequently. She must avoid
> exposure to extreme cold and concentrated exposure to vibration. She must avoid
> hazardous machinery, defined as unshielded moving machinery. She must avoid
> exposure to unprotected heights. The claimant must be able to elevate her foot no
> more than 18 inches during normal breaks.

(Tr. 14)

In making this finding, the ALJ made several credibility findings and evaluated several

pieces of medical opinion evidence. For example, the ALJ found that Plaintiff's statements

concerning intensity, persistence, and limiting effects of her symptoms were "not fully credible."

(Tr. 15) In substance, Plaintiff testified that she was unable to work due to pain and swelling in

her foot. She said that, while the pain mainly centers in the middle of her right foot, on bad days,

the pain radiates to her ankle, knee and back. Plaintiff testified that this happens every two to

three weeks, and that when it occurs, she has to lie on her bed and elevate her leg. (Tr. 44)

Plaintiff argued that this precludes her ability to work.

The ALJ found Plaintiff's statements regarding her symptoms to be not fully credible in

light of numerous inconsistencies in the record. (Tr. 15) The ALJ took specific note of

Plaintiff's rather extensive activities of daily living, which included a variety of household

---

[8] The Court notes that at the administrative hearing, Plaintiff did not assert that her impairments met or medically equaled a listing, and she makes no such argument before this Court. Therefore, the Court will not undertake any further step three analysis.

chores as well as caring for twelve horses, cleaning stalls, and horseback riding. Plaintiff also was able to shop for herself, including walking for more than an hour at a time, work on a computer, swim, play games with her stepson, and attend concerts and horse shows. (Tr. 15-16) The ALJ also noted that Plaintiff was not compliant with treatment recommendations. Plaintiff continued to smoke despite being advised that smoking increases chronic pain. (Tr. 16) Similarly, the ALJ identified several instances in which Plaintiff presented for pain medications at various emergency rooms, but did not follow-up with her primary care physician as directed. (See, e.g., Tr. 18) The ALJ further identified clinical and objective medical evidence that was inconsistent with Plaintiff's subjective statements, including imaging and other studies that showed no acute abnormality in her foot. (Tr. 16-17)

As to the medical opinion evidence, the ALJ discounted the opinion of Dr. Suresh Krishnan, M.D., (Tr. 19), who treated Plaintiff's pain, and who opined that this pain limited her functional abilities and activities of daily living. (Tr. 722-25) Next, the ALJ gave "significant weight" to the opinion of Dr. Colleen Ryan, M.D., a state agency medical consultant, who opined that Plaintiff was capable of light work, except for a limitation to four hours of walking per eight hour workday. (Tr. 579) The ALJ altered this finding somewhat in her RFC, holding that, based on Plaintiff's admissions, she was capable of lifting more weight than Dr. Ryan thought. The ALJ thought Plaintiff capable of lifting fifty pounds. (Tr. 19-20)

The ALJ also discussed the medical opinion evidence of Dr. Maureen Gottfried, D.O., and Dr. Jeffrey Petersohn, M.D., both of whom evaluated Plaintiff in connection with Plaintiff's application for Worker's Compensation. Dr. Gottfried thought Plaintiff "would benefit from further evaluation and treatment by pain medicine as opposed to further treatment by neurology." (Tr. 373) Dr. Petersohn opined that it was uncertain whether there could be sufficient medical

improvement with sufficiently few side effects to allow Plaintiff to return to work.  (Tr. 386)

The ALJ gave these opinions "little weight" because they were evidence adduced in the course

of Worker's Compensation claims, and were not submitted in relation to Plaintiff's Social

Security claim, and therefore, not sufficiently relevant.  (Tr. 19)

At steps four and five, the ALJ relied on the testimony of VE Gary Weimholt.  The ALJ

posed a series of hypothetical questions to the VE, some of which included limitations consistent

with the RFC included in the ALJ's written decision.  Relying on the VE's testimony, the ALJ

concluded that Plaintiff could not return to her past work as an animal cruelty investigator, but

that there were other jobs in the national and regional economy that Plaintiff could still perform,

including sales clerk, telephone solicitor, and receptionist.  (Tr. 21, 66-71)  Each of these jobs

would be semi-skilled and performed at either the light or sedentary level.  Because Plaintiff

could engage in work that was available in the national economy, the ALJ held that Plaintiff was

not disabled.[9]  (Tr. 21)  Plaintiff then sought review of the ALJ's decision, but the Appeals

Council denied review.  (Tr. 1-3)

### D.      Issues Before This Court

Before this Court, Plaintiff makes three arguments for reversal.  First, Plaintiff argues that

the ALJ erred by placing disproportionate weight on her activities of daily living as a reason for

denying benefits.  (ECF No. 20 at 8-10)  Plaintiff argues the ALJ selectively quoted testimony of

what Plaintiff can do on "good days," without noting Plaintiff's contentions that she was much

more limited on "bad days."  This broadens into a wider issue with the ALJ's credibility analysis.

(See ECF No. 20 at 9) ("Furthermore, the ALJ failed to properly credit Plaintiff's subjective

---

[9] Plaintiff's counsel asked the VE to consider a similar hypothetical individual who would need to elevate her foot at waist level, as needed, throughout the day.  (Tr. 71)  The VE opined that, based upon his experience, such an individual would not find employment.

complaints of pain, all of which were consistent with the objective medical evidence.") (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th 1984)). Next, Plaintiff argues that "[t]he RFC is not based upon substantial evidence and lacks medical support." (ECF No. 20 at 10) This includes two separate arguments. First, Plaintiff alleges that there is not sufficient *medical evidence* to support the RFC. (ECF No. 20 at 10-12) Second, Plaintiff alleges that the ALJ failed to give sufficient reasons for discounting Dr. Krishnan's opinion. (ECF No. 20 at 12-13) Defendant responds by arguing that the ALJ's findings are supported by substantial evidence.

## II.     Standard of Review and Analytical Framework

"To be eligible for [disability] benefits, [Plaintiff] must prove that [she] is disabled .…" Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423 (d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During the process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can

perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Circ. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eight Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;

6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outsize that zone simply because this Court might have reached a different conclusion had it been the original finder of fact. See also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome.").

## III. **Discussion of Issues Presented**

As noted above, Plaintiff has raised three main issues with the ALJ's analysis in this matter: (1) whether the ALJ properly evaluated Plaintiff's credibility; (2) whether the RFC is supported by sufficient medical evidence; and (3) whether Dr. Krishnan's medical opinion was properly discounted. For the reasons discussed below, none of these issues requires reversal. The ALJ's decision is supported by substantial evidence and correctly applies the governing law.

### A. **Plaintiff's Daily Activities and ALJ's Credibility Analysis**

As discussed earlier, the ALJ discounted the credibility of Plaintiff's statements concerning the intensity, persistence, and limiting effects of her foot injury. (Tr. 15) Plaintiff raises several issues with this credibility analysis. First, Plaintiff argues that the ALJ put too much emphasis on her activities of daily living, especially her admissions that she often goes horseback riding and works on her farm, even though she is allegedly disabled. Second, Plaintiff argues that the ALJ improperly discounted her assertions of disabling pain because she contends that her subjective complaints "were consistent with the objective medical evidence," and that

the ALJ failed to properly consider the factors enumerated in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  (See ECF No. 20 at 8-9)

Credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will defer to her decision.  Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005)).  Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" Julin, 826 F.3d at 1086 (quoting Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)).  In evaluating Plaintiff's credibility regarding the extent of her symptoms, the ALJ was required to consider all of the evidence, including objective medical evidence, and the factors enumerated in Polaski, including:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of Plaintiff's pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) Plaintiff's functional restrictions.  Julin, 826 F.3d at 1086; see also 20 C.F.R. § 416.929(c).[10]

In this instance, good reasons and substantial evidence support the ALJ's adverse credibility determination.  First, much of the medical evidence in this case does not support the level of disability that Plaintiff claims.  For example, x-rays taken right after Plaintiff's accident in February of 2009 failed to reveal any fracture in the foot.  (Tr. 348)  Although diagnostic testing shortly thereafter was *consistent* with a stress fracture at the base of the 5th metatarsal, (Tr. 517), a follow-up MRI done on June 10, 2009 revealed no evidence of fracture.  (Tr. 514) Further testing by the podiatrist, Dr. Trang, on April 13, 2010 and August 18, 2010, found "no

---

[10] The ALJ need not specifically cite Polaski, or specifically discuss each Polaski factor. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005); Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

acute abnormality" with the foot. (Tr. 408, 483) (See also Tr. 512) ("Normal EMG and nerve conduction study of both lower extremities …. [T]here is no definite evidence of right peroneal neuropathy or tarsal tunnel syndrome by this study). Instead, medical evidence from August 13, 2010, showed "complete healing of the prior metatarsal fracture." (Tr. 569) In February of 2011, diagnostic imaging also found "no fracture and/or dislocation of the foot." (Tr. 433)

In the end, the objective medical basis for Plaintiff's diagnosis of RSD is not clear. See Tr. 394 ("At this time clinically, she still has [RSD] even though neurological examination and bone scan showed negative stress injury."). So even though Plaintiff has an extensive history of medical treatment for her right foot, diagnostic testing and other objective medical evidence does not clearly support Plaintiff's assertions regarding the extent of her symptoms.

A lack of objective medical evidence to support the level of limitations claimed is a proper factor in discounting a plaintiff's credibility. See Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) (holding that objective medical evidence is one factor in discounting a plaintiff's assertions of disabling limitations); see also 20 C.F.R. §§ 404.1529, 416.929 ("Objective medical evidence [] is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). The medical evidence here is at best mixed, and it supports the ALJ's decision to discount Plaintiff's credibility. Cf. Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("It is the ALJ's duty to resolve conflicts in the evidence.").

Second, good reasons and substantial evidence also support the ALJ's conclusion that Plaintiff's daily activities are not consistent with a finding of disability. In both her Function Report and her hearing testimony, Plaintiff admitted to extensive daily activities such as taking care of her stepson, helping to take care of a farm, attending concerts, horseback riding, and a

host of routine housekeeping chores. These daily activities are not consistent with allegations of disabling pain.

In response, Plaintiff cites several cases for the proposition that an ALJ cannot rely upon a Plaintiff's "limited daily activities to discredit allegations of disabling impairments." (ECF No. 20 at 8) See, e.g., Hogg v. Shalala, 45 F.3d 276, 277 (8th Cir. 1995) (noting that activities such as light housework and visiting with friends were not sufficient to find that a claimant can do full time work); Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998) ("[T]he ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."). Plaintiff's argument is not persuasive.

While it is true that the Eighth Circuit has, at times, given conflicting indications concerning the importance of daily activities to the credibility analysis, see Clevenger v. Social Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009) (acknowledging that the Eighth Circuit has sent mixed signals about the importance of daily activities), the activities admitted by Plaintiff go beyond any of the cases she cites. For example, Plaintiff admits to:

- Doing light farm work; (Tr. 20)
- Carrying 50 pound bags of grain to feed her horses; (Tr. 47)
- Being the primary caregiver for a seven-year-old stepson, including cleaning for him, doing his laundry, and giving him pony rides; (Tr. 49-50)
- Completing household chores, including vacuuming, washing dishes, cleaning the kitchen floor, walking the dog, and pulling weeds; (Tr. 47-48)
- Grocery shopping for an hour and a half, including walking the entire store, and loading and unloading items into the car; (Tr. 47-48);
- Attending concerts, horse shows, and going out for dinner and drinks; (Tr. 267)
- Taking care of six horses, in addition to her daughter's six horses, including watering the horses, brushing them, cleaning their stalls, and riding them "most days." (Tr. 45, 50)

The ALJ could reasonably conclude that these are not the activities of a person afflicted with disabling levels of foot pain, and such activities are a proper basis upon which to discount Plaintiff's subjective allegations. Clevenger, 567 F.3d at 976 (holding that activities such as doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives supported an ALJ's decision to discredit a plaintiff's assertions of disabling pain).

Plaintiff further argues that the ALJ failed to consider her assertions that her activities were more limited on "bad days." (ECF No. 20 at 9)  In support, Plaintiff points to hearing testimony where (in response to questioning from her attorney) she said that she does "less on bad days than [she does] on normal days." (Tr. 56)  But this vague statement is not enough to rebut the clear and specific admissions of extensive daily activities that Plaintiff does.  Plaintiff still admitted to all of the specific activities discussed above, and she admits to doing them on a regular basis.  These activities are inconsistent with allegations of disabling pain.  Furthermore, even if there were evidence in the record that supported Plaintiff's assertion that she does fewer activities on "bad days," it would be up to the ALJ to resolve discrepancies between that evidence and the clear evidence of her activities on the good days. Travis, 477 F.3d at 1041 ("It is the ALJ's duty to resolve conflicts in the evidence.").  As it is, substantial evidence supports the ALJ's findings regarding Plaintiff's activities of daily living.

Because Plaintiff's major complaints—both to her doctors and to the Commissioner—revolved around her foot pain, and because the objective medical evidence failed to fully account for this pain, Plaintiff's activities of daily living are some of the best and most probative evidence related to her functional and exertional limitations.  The ALJL could reasonably conclude that these activities demonstrate Plaintiff was much less limited than she claimed.

The ALJ also considered several other Polaski factors, thus demonstrating that her credibility analysis comported with the law. With regard to precipitating and aggravating factors, the ALJ credited Plaintiff's testimony that cold weather significantly impacted her pain when the ALJ included in the RFC a limitation to avoid extreme cold. See Tr. 46 (noting that cold temperatures aggravate Plaintiff's pain); and Tr. 14 (limiting Plaintiff's RFC to avoiding exposure to extreme cold). Plaintiff also testified that elevating her foot alleviates her pain, and that she accomplishes some of her activities of daily living by elevating her foot periodically. The ALJ accounted for this factor by allowing Plaintiff to elevate her foot during regular breaks.[11]

With regard to Plaintiff's medications, she argued that her pain medication made her foggy and fatigued. (ECF No. 20 at 10) Yet, Plaintiff also told her pain management doctor, Dr. Krishnan, that she was not experiencing any side effects from her pain medication, (Tr. 655) and that she only experienced side effects from her Vicodin when she took too much of it. (Tr. 39-40) In addition, Plaintiff always appeared "alert and oriented" at her doctor's appointments, even though she was on pain medication throughout. (See, e.g., Tr. 671, 679) Because Plaintiff's arguments regarding side effects were inconsistent and contradicted by the medical records, the ALJ could permissibly discount the testimony. Crawford v. Colvin, 809 F.3d 404, 410 (8th Cir. 2015) ("[A]n ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances.") (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589-90 (8th Cir. 2015)). For all of the above reasons, the ALJ properly applied the analysis required under Polaski.

---

[11] The ALJ specifically considered the timing, frequency, and length of breaks available to Plaintiff when consulting with the VE. (Tr. 70)

As an additional matter, the Court notes that Plaintiff has never been compliant with medical direction, and specifically failed to follow up with suggested medical treatments, such as additional diagnostic testing, and participation in relevant medical trials. This undercuts her credibility. For instance, after Plaintiff was referred to Dr. Krishnan for consultation on her pain problems, Dr. Krishnan diagnosed RSD and recommended a spinal cord stimulator trial, along with physical therapy and exercises. (Tr. 591) Plaintiff did not follow through with these recommendations, however, and indeed, she did not seek any regular treatment for her right foot in 2012, other than emergency room visits for flare-ups of pain, in January, May, and July of 2012. (Tr. 581-85; Tr. 468; Tr. 551; and Tr. 535) During her trips to the emergency room in 2012, Plaintiff was consistently told to follow up with a primary care physician, but there is no evidence that she did so. (Id.)

Moreover, when Plaintiff finally returned to treatment with Dr. Krishnan, in January of 2013, she consistently failed to fail to follow up with Dr. Krishnan's recommendations at that time, including undergoing a diagnostic MRI, or completing physical therapy. A failure to follow medical direction has long been held to be a proper basis for discounting a plaintiff's credibility.[12] Aguiniga v. Colvin, 833 F.3d 896, 902 (8th Cir. 2016) (holding that noncompliance with the suggestions of a treating physician is a proper ground upon which to discount a plaintiff's credibility); see also Casey v. Astrue, 503 F.3d 687, 693 (8th Cir. 2007) (noting that failure to seek medical treatment indicates symptoms that are not as bad as the plaintiff asserts).

---

[12] As noted in the factual discussion above, since February of 2013, Plaintiff has undergone two spinal cord stimulator trials, and she also eventually underwent physical therapy. Plaintiff reported these treatments made the pain worse. (Tr. 622, 628-31) Plaintiff also continued with pain medication and ankle block procedures, which give her some relief and increase in functionality. (Tr. 610)

Another example of Plaintiff's failure to follow medical direction is her failure to quit smoking. Plaintiff's doctor recommended "smoking cessation" because "[s]moking increases chronic pain." (Tr. 415) Plaintiff admittedly failed to stop smoking, (Tr. 415, 655), thus giving the ALJ an additional reason to discount her credibility. See Crawford v. Colvin, 809 F.3d 404, 411 (8th Cir. 2015) (holding that an ALJ may properly consider treatment non-compliance, including failure to quit smoking, in evaluating a plaintiff's subjective complaints).

For at least the foregoing reasons, the Court concludes that the ALJ did not err in discounting Plaintiff's subjective complaints. Rather, good reasons and more than substantial evidence support the ALJ's conclusions and extensive analysis in this regard. Plaintiff's arguments to the contrary are unavailing.

### B.       Plaintiff's RFC

Next, Plaintiff argues that the ALJ's residual functional capacity ("RFC") analysis is not supported by substantial evidence, and this case must therefore be remanded. (ECF No. 20 at 10-14) Plaintiff also argues that the ALJ improperly discounted Dr. Krishnan's opinion evidence. Because the propriety of Plaintiff's RFC rests on whether the ALJ properly discounted a treating physician's medical opinion evidence, the Court will address that issue first. After discussing the ALJ's treatment of the medical opinion evidence, the Court will assess the sufficiency of the evidence supporting the RFC.[13]

Dr. Krishnan was a treating physician managing Plaintiff's pain symptoms. Dr. Krishnan treated Plaintiff from late 2011 through the administrative hearing in this matter. On March 20, 2014, Dr. Krishnan opined that Plaintiff suffered from pain to her foot and right thigh which caused "restrictions [in her activities of daily living]." (Tr. 722) In support, Dr. Krishnan said

---

[13] Defendant did not directly address the issue of Dr. Krishnan's opinion.

that Plaintiff suffered from an antalgic and asymmetric gait, and was unable to do heel to toe walks. (Id.) Importantly, however, Dr. Krishnan declined to speculate as to any exertional limitations that Plaintiff might suffer from, even though he was specifically asked about these limitations. Instead, Dr. Krishnan said that he was "unable to complete rest of form until [Plaintiff] completes functional capacity eval[uation]." (Id.) The ALJ gave "little weight" to Dr. Krishnan's opinion that Plaintiff's pain impacted her ability to work. (Tr. 19)

In assessing a treating physician's medical opinion evidence, "[t]he ALJ must give controlling weight to a treating physician's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." See Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015) (citations and quotations omitted). Even if the treating physician's opinion "is not entitled to controlling weight," it is ordinarily still "entitled to substantial weight." Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007). The opinion may have "limited weight if it provides conclusory statements only, or is inconsistent with the record." Papesh, 786 F.3d at 1132 (quotations omitted). Indeed, the ALJ "may discount or even disregard the opinion … where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. Finally, any opinion from a doctor as to whether a plaintiff is "disabled" may be disregarded, because it "involves an issue reserved for the Commission and therefore is not the type of medical opinion to which the Commissioner gives controlling weight." Cypress v. Colvin, 807 F.3d 948, 951 (8th Cir. 2015).

Here, the ALJ properly discounted Dr. Krishnan's opinion. As already noted, Dr. Krishnan only completed a portion of the Medical Source Statement, and explicitly declined to address any of Plaintiff's exertional requirements. Thus, Plaintiff's own doctor failed to address

the most important issue in a disability case—Plaintiff's functional limitations and how those limitations impact her ability to work.

Furthermore, Dr. Krishnan's opinion is inconsistent with the opinion of Dr. Ryan, a state agency medical consultant, who was of the opinion that Plaintiff could perform light work so long as her standing and walking were limited to four hours per eight hour workday. (Tr. 579) Dr. Ryan's analysis, to which the ALJ ascribed "significant weight," was supported by thorough citations to medical evidence and reasoning based upon the objective medical records. (See Tr. 578-79) (citing multiple diagnostic tests and objective medical records in support of RFC finding) Inconsistency with other well-supported medical opinion evidence is a proper ground upon which to discount Dr. Krishnan's opinion. See Reece v. Colvin, 834 F.3d 904, 909 (8th Cir. 2016) (permitting an ALJ to discount a treating physician's opinion evidence "if other medical assessments are supported by superior medical evidence"). Additionally, as already noted, the objective medical records and Plaintiff's daily activities do not support findings of serious exertional limitations. Therefore, Dr. Krishnan's opinion is inconsistent with the record. See Igo v. Colvin, 839 F.3d 724, 731 (8th Cir. 2016) (upholding an ALJ's decision to discount a treating physician's opinion where the opinion "contrasts sharply with the other evidence of record, and is without substantial support from the other evidence of record"). Good reasons and substantial evidence support the ALJ's treatment of Dr. Krishnan's opinion evidence.

Finally, the RFC in this matter is supported by sufficient medical evidence. The RFC tracks the opinion evidence of Dr. Ryan in all respects, except for the lifting/carrying and standing/walking limitations. Regarding these latter exertional limitations, the ALJ based her findings upon admissions made by Plaintiff at the hearing that she was capable of carrying 50 pound bags of grain into her barn in order to feed her horses. Plaintiff's admissions concerning

this exertional limitation are a proper basis upon which to assign a lifting/carrying and standing/walking limitation.  Cf. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (noting that a plaintiff's RFC is based on, *inter alia* a "claimant's own descriptions of his or her limitations").  More fundamentally, an RFC that tracks the findings of a state agency physician, discusses the objective medical evidence, and takes into account Plaintiff's testimony is supported by substantial evidence.  See Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (holding that an RFC is supported by substantial evidence where it is based on "state-agency opinions," a plaintiff's subjective complaints and testimony, and other medical evidence).  The ALJ's RFC determination in this case is supported by substantial evidence.

Finally, although the RFC is supported by substantial evidence as it is, any failure to assign a slightly more restrictive RFC would have been harmless error because all of the jobs that the ALJ found Plaintiff capable of doing at step five are either sedentary or light in nature.  See 20 C.F.R. § 404.1567(c) (noting that if "someone can do medium work [which includes lifting up to 50 pounds], we determine that he or she can also do sedentary or light work").

## IV.  <u>Conclusion</u>

For all of the foregoing reasons, Plaintiff's allegations that the ALJ erred are unavailing.  Plaintiff was afforded a full and fair opportunity to present her claims, and the ALJ's ultimate decision did not fall outside the available "zone of choice."  Buckner, 646 F.3d at 556.  It must therefore be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in this matter is **AFFIRMED**.

A separate Judgment shall be entered this day.


/s/ *John M. Bodenhausen*
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of January, 2017